Richard Darvin BATES, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00248–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 10, 2000.

Decided Feb. 11, 2000.

Discretionary Review Refused June 28, 2000.

Carol Hammond, Paris, for appellant.

Kerye Ashmore, County Atty., Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

After jury trial as to both guilt/innocence and punishment, Richard Darvin Bates was convicted of theft of property over $20,000 but less than $100,000 of value, a third degree felony. TEX. PEN.CODE ANN. § 31.03(e)(5) (Vernon Supp.2000). He received a sentence of six years' confinement in the Texas Department of Criminal Justice, Institutional Division. TEX. PEN.CODE ANN. § 12.34(a) (Vernon 1994).

On appeal, Bates raises four issues: 1) that the trial court erred in allowing the jury to view a videotape of Bates's oral statement to law enforcement authorities, because of the State's failure to comply with Article 38.22 of the Code of Criminal Procedure; 2) that he received unconstitutionally ineffective assistance of counsel because counsel failed to object to the State's abandonment of certain paragraphs in the indictment; 3) that the trial court erred in permitting the State to amend or abandon allegations in the indictment concerning a theft alleged to have occurred on

August 1, 1995; and 4) that the trial court erred in permitting the State to make an actual, physical interlineation in the indictment after the trial commenced.

█ In his first point on appeal, Bates contends the trial court erred in admitting for the jury's consideration the videotape of his interview at the Paris police station. He contends the State failed to comply with the requirements of *Miranda v. Arizona* [1] and TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2000), (a) in that the police failed to terminate the interrogation when Bates invoked his right to remain silent; and (b) in that the State failed to provide a copy of the videoed statement to defense counsel within the twenty-day limitation prescribed by Article 38.22, § 3(a)(5).

No statement of an accused as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless, *inter alia*, an electronic recording is made of the statement and, prior to the statement but during the recording, the accused is warned 1) that he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at trial; 2) that any statement he makes may be used as evidence against him in court; 3) that the accused has the right to have a lawyer present to advise him prior to and during any questioning; 4) that if the accused is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and 5) that he has the right to terminate the interview at any time. The accused must knowingly, intelligently, and voluntarily waive any rights set out in the warning. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5)(b).

█ The determination of whether an individual is "in custody" for purposes of Article 38.22 must be made on an *ad hoc* basis after considering all of the objective circumstances. Police station questioning does not, in and of itself, constitute custody. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App.1996). There are four general situations that may constitute custody: 1) when the suspect is physically deprived of his freedom in any significant way; 2) when a law enforcement officer tells a suspect he cannot leave; 3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and 4) when there is probable cause for arrest and law enforcement officers do not tell the suspect that he is free to leave. *Id.* at 255. In situations one through three above, the restriction on freedom of movement must amount to the degree associated with an arrest, as opposed to an investigative detention. *Id.* at 255. The ultimate inquiry is whether there was a formal arrest or restraint on freedom associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). In situation four, the officers' knowledge of probable cause to arrest must be manifested to the suspect, i.e., custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 255. The only relevant inquiry is how a reasonable person in the suspect's shoes would have understood the situation. *Stansbury*, 511 U.S. at 325, 114 S.Ct. 1526.

Detective Stephen Holmes of the Paris Police Department was notified on January 3, 1996, of the theft of scrap brass [2] from the Phillips Lighting plant. Bates, who was employed by a Phillips contractor

---

**1.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** Light bulbs were manufactured at the Phillips Lighting plant. In the manufacturing process, part of the brass used therein becomes scrap. The scrap is collected in small bins on the manufacturing floor and transferred to a larger bin on the plant's premises.

and who performed security work at the plant on weekends, was considered a suspect. On January 5, 1996, Detective Holmes received a call that Bates was at Allen Scrap Metal in Mount Pleasant selling scrap brass that was believed to have come from Phillips. Detective Holmes was proceeding south along Highway 271 toward Mount Pleasant when he encountered Bates. Bates was driving a pickup truck and pulling a trailer, and was accompanied by his nineteen-year-old stepson and five-year-old daughter. Bates had been pulled over by a Titus County sheriff's deputy for having no registration on the trailer and because he fit the description of the theft suspect broadcast on the police radio. After the Titus County deputy had the information he needed from Bates, Holmes approached Bates and spoke to him about his investigation of the theft from the Phillips's plant. At Holmes's request, Bates accompanied him back to the Paris police station. On the way, Bates stopped to drop off his stepson and daughter. An officer searched the stepson before he was allowed to leave. No search was performed on the daughter. Bates then went to the Paris police station, where Holmes and another officer interviewed him. The entire interview was recorded on videotape and was played before the jury.

■ The State contends that the videotaped interview was not the result of *custodial* interrogation and, therefore, the requirements of warnings and waivers were not triggered. Bates contends that situations one, three, and four of the *Dowthitt* factors are applicable to this case. After Bates had voluntarily followed the law enforcement officer to the station, Holmes read Bates his rights and discussed them with him. Mere recitation of *Miranda* warnings is more indicative of proper cautiousness than it is of an officer's intent to arrest. *Dancy v. State*, 728 S.W.2d 772 (Tex.Crim.App.1987).

The interview included the following:

Bates: Okay, now that I don't understand. Talk to you about—that's why I'm here, I don't know what we're talking about. That's where you say sign it before we talk about it. I don't know.

Detective: I mean I'll explain it to you.

Bates: Okay. No, I mean I understand—

Detective: You're not under arrest.

Bates: No, what I'm saying is I understand all of this and signing this means if you've done everything here.

Detective: Right.

. . . .

Detective: That I couldn't talk to you until I read you your rights, and I asked you if you would voluntarily come back to the station with me.

Bates: And I did.

Detective: And you agreed to it. Okay, so we don't have any problem with what we've done so far?

Bates: No.

. . . .

Bates: ... I don't have anything more to say and the only thing I need to know is—that's what I asked him. Where do we go from here. Either—if he wants me to come back in at a later time, he can call me, I'll give you a phone number.

Detective: Where we go from here—.

Bates: I'm not running from here. I live here, and I've lived here for 14–15 years, and I've got no reason to leave. I've got no reason to go nowhere.

Detective: We don't think you're gonna go anywhere.

Bates: I know that.

Detective: But you're right. You do have the right to terminate. You can stop, you can say I'm through, I want to go home, whatever, because you're not under arrest today. Today is just the day that you're given a chance to tell the truth.

Bates:    That's why I wanted to let you know too that if, you know, you don't have to put out a warrant. Call me, I'll come in.

. . . .

Bates:    Like the (inaudible) today, like I said, he said to follow him back in. I followed him back in. I have no reason to run. I have no reason to think that I have a reason to run. You know, the law works with you or against you. If it's against you, it's because it was meant to be against you. If it's with you, it's because it was meant to be with you. And that's why I say, if he gets all the facts and everything you need, call me. I'll be willing to—.

Detective:    He already has all the facts that he needs. He could take a warrant today if he wanted it.

Bates:    I'm aware of that.

■■■ Whether a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location and a person knows or should know that the police officer suspects that person may have committed or been implicated in the crime, such person is not restrained of his freedom of movement and is not in custody. The accused is not in custody where he is accompanied by police officers to the police station or some other relevant place in furtherance of investigation of a crime, upon invitation, request, or even urging of the police, absent threats by the police, either express or implied. Custody occurs when the suspect is actually arrested and can also occur when a suspect is physically deprived of his freedom of action in any significant way, such as being placed in the police vehicle and taken to the station for questioning, or when the suspect is led to believe, as a reasonable person, that he is deprived of freedom of movement, or when there is probable cause to arrest and the police do not tell the suspect that he is free to leave. *Shiflet v. State,* 732 S.W.2d 622 (Tex.Crim.App.1985).

Although Bates was being questioned in a small room at the police station, there was no indication that he was ever physically deprived of his freedom in any significant way. Nowhere was there any testimony by Bates that the officer had told him that he could not leave, and the videotape shows that the law enforcement officer told him that he was not under arrest. Bates indicates by his statements that he knew that he was free to leave and was so informed by the police officer. After the interview, Bates did leave. We conclude that Bates was not in custody, and, therefore, the interrogation was not controlled by *Miranda* or Article 38.22.

■■■ Article 38.22, § 3(a)(5) pertains to the second part of this issue on appeal and provides that not later that the twentieth day before the date of the proceeding, the attorney representing the defendant is to be provided with a true, complete and accurate copy of all recordings the defendant made. However, this Rule applies *only to custodial interrogations, and is not* applicable to this noncustodial statement. The point of error complaining of the failure to provide a copy of the video not later than twenty days before the date of proceeding is overruled.

■■■ Points of error two, three, and four all concern the attempt by the State to amend or abandon certain paragraphs of the indictment. In point two, Bates asserts that his trial counsel was constitutionally ineffective for failing to object to a purported abandonment or amendment of the indictment to delete five paragraphs pertaining to alleged theft of aluminum. Ineffective assistance of counsel is demonstrated by a showing of deficient performance by counsel and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, trial counsel's performance cannot be held to be ineffective unless it is shown that the trial court committed error in permitting the State to abandon these allegation, and such error was prejudiced.

Prior to the commencement of the voir dire and without objection from defense counsel, the State moved for leave to abandon paragraphs of the indictment which alleged that Bates stole aluminum on September 12, 1994, October 31, 1994, March 27, 1995, April 10, 1995, and July 5, 1995. Counsel for the State informed the trial court that the abandonment on these particular dates was as to theft of aluminum only, and that any allegations regarding theft of brass were still being charged.

An amendment is an alteration to the face of the charging instrument affecting its substance. *Eastep v. State*, 941 S.W.2d 130, 132 (Tex.Crim.App.1997). In order to ensure the accused of his constitutional right to be informed of the nature of the charges against him,[3] there must be an actual, physical alteration of the charging instrument. *Id.* at 132; *Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim.App.1992). An amendment to the charging instrument is subject to the limitations set forth in TEX.CODE CRIM. PROC. ANN. art. 28.10 (Vernon 1989).[4]

An abandonment, on the other hand, although accomplished by physical alteration, does not affect the substance of the charging instrument. *Eastep*, 941 S.W.2d at 133. *Eastep* recognized three situations in which altering the charging instrument constitutes an abandonment, rather than an amendment: 1) abandonment of one or more of the alternative means by which an offense may be committed; 2) abandonment of an allegation if the effect is to reduce the prosecution to a lesser included offense; and 3) abandonment of surplusage. *Id.* at 135. *Eastep* deals with a situation similar to that presented in this case:

In the instant case, the indictment alleged theft of property with an aggregate value of $20,000 or more. The State altered the face of the indictment to delete nine appropriations. After the alteration there remained appropriations with an aggregate value of over $20,000. The deletion may be considered as either an abandonment of an alternative means of committing the offense or as the abandonment of surplusage. Under either circumstance, the alteration did not affect the substance of the charging instrument. The alteration was *not* an amendment.

*Id.* at 135 (citations omitted).

Likewise, in the present case, certain allegations pertaining to the theft of aluminum were deleted from the charging instrument. All allegations regarding theft of brass were retained in the indictment, and the amounts deleted from the indictment did not affect the minimum offense value of $20,000. The trial court did not err in allowing the State's requested abandonment, and defense counsel's objection thereto would have been unavailing. Therefore, we hold that trial counsel did not provide ineffective assistance in not objecting. *See Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir.1998).

Point of error three alleges error by the trial court in permitting the State to abandon, over Bates's objection, an allegation in the indictment regarding a theft

3. TEX. CONST. art. I, § 10; *Voelkel v. State*, 501 S.W.2d 313, 314–15 (Tex.Crim.App.1973).

4. Article 28.10 provides
  (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.
  (b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.
  (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

alleged to have occurred on August 1, 1995. That allegation referred to theft of brass by Richard Bates, but was actually a theft allegedly perpetrated by *Johnny Ray* Bates, a different person. On appeal, Richard Bates argues that this was actually an amendment of the indictment and, therefore, could not have been done over a defendant's objection under Article 28.10(b).

As previously discussed, an accused is constitutionally entitled to learn in advance of trial and with reasonable certainty with what he is being charged, so he can prepare a defense. This information must come from the face of the charging instrument. *Eastep*, 941 S.W.2d at 132. We have previously discussed the three types of alteration that would constitute an abandonment rather than an amendment to a charging instrument. *See Eastep*, 941 S.W.2d at 133–34.

■ The *Eastep* case cites, and Bates argues, that *Hilton v. State*, 879 S.W.2d 74 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd), is controlling. In the *Hilton* case, the State attempted to alter the indictment, which had previously charged the defendant with the theft of "two facsimile machines" to now charge him with theft of "one facsimile machine." The Fourteenth Court of Appeals ruled that this was an amendment subject to the restrictions of Article 28.10, and not, as argued by the State, simply an abandonment of one facsimile machine from the indictment. The court said, "We note that the State not only deleted the words 'two facsimile machines,' but substituted the words 'one facsimile machine.' We find that the State's action in changing the words in the indictment was an 'amendment' within the meaning of Article 28.10." *Hilton*, 879

S.W.2d at 78–79. The other cases cited in *Eastep*, 941 S.W.2d at 132–33,[5] all involve a common characteristic, to-wit, the striking of one fact or allegation by the State and the substituting of another fact or allegation. We find that the State's dropping of the allegations of theft on August 1, 1995, was the abandonment of surplusage. There was no attempt to substitute *Richard* Bates for *Johnny Ray* Bates as the perpetrator of that alleged theft. That allegation was simply dropped. Where the indictment charges an individual with the appropriation of property in an aggregate amount pursuant to one scheme or continuing course of conduct, the State is not required to prove each individual appropriation. *Eastep*, 941 S.W.2d at 135.

We hold that this was properly an abandonment, not an amendment, and that the trial court did not err in permitting the State to abandon allegations during the course of the trial.

In Point of error four, Bates contends the trial court committed reversible error in permitting the physical interlineation of the abandoned allegations after the commencement of the trial. (The word *interlineation* means the act of writing between the lines of an instrument, as well as what is written between the lines. BLACK'S LAW DICTIONARY, 819 (7th ed.1999).) An examination of the abandoned allegations in the indictment shows that there was no interlineation on these allegations, but rather a striking through of the charges.

■ We have determined that the alterations to the charging instrument constitute abandonment, rather than amendment. Abandonment does not invoke the requirements of articles governing amendments of indictments or information. *Eas-*

---

5. *Sodipo v. State*, 815 S.W.2d 551, 555 (Tex. Crim.App.1990) (opinion on reh'g) (alteration of a cause number in an enhancement paragraph); *Beebe v. State*, 811 S.W.2d 604, 606 (Tex.Crim.App.1991) (addition of the manner and means of committing an offense); *Hillin v. State*, 808 S.W.2d 486, 487 (Tex.Crim.App. 1991) (alteration of a weapon in an aggravat-

ed assault); *Garcia v. State*, 928 S.W.2d 666, 667 (Tex.App.-Corpus Christi 1996, no pet.) (alteration of the alleged date); *McCoy v. State*, 889 S.W.2d 354, 358 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd); *Hinojosa v. State*, 875 S.W.2d 339, 341 (Tex.App.-Corpus Christi 1994, no pet.) (deleting "delivery" and replacing it with "possession").

*tep,* 941 S.W.2d 130. Thus, the language about the amendment of an indictment contained in Article 28.10 of the Texas Code of Criminal Procedure is not applicable to this situation. When there is no evidence on a particular charge in the indictment, the allegation may be abandoned or the trial court may enter an instructed verdict on that charge anytime before the matter goes to the jury.

The State points out that the only legal consequence of an abandoned allegation is its double jeopardy implications. *Ex parte Scelles,* 511 S.W.2d 300, 301 (Tex.Crim. App.1974). Point of error four is overruled.

The judgment is affirmed.