NO. 07-02-0159-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 30, 2004

_____


KELLEY D. COURTNEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 208TH DISTRICT COURT OF HARRIS COUNTY;

NO. 875704; HONORABLE DENISE COLLINS, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Kelley D. Courtney was convicted of felony murder following a jury trial. The jury assessed punishment at 25 years in the Texas Department of Criminal Justice Institutional Division. In three points of error she (1) challenges the trial court's overruling in part her motion to suppress an oral confession; (2) challenges the trial court's denial of her motion for mistrial based on a reference to a polygraph administered to her; and (3) alleges ineffective assistance of trial counsel. We affirm.

On January 8, 2001, Roland Clemons, Jr., a three-year-old boy, was left by his father in appellant's care. The child's father and appellant had been living together for about one-and-a-half years. While in the care of appellant, the child stopped breathing. Appellant contacted the boy's father by phone, and drove the child to a local hospital. The child was transferred to Texas Children's Hospital and died four days later.

Initial autopsy results were inconclusive as to the cause of death. The medical examiner requested police investigate the death further and obtain a polygraph of appellant. On April 26, 2001, two police officers arrived at appellant's home and asked her to accompany them to the Houston Homicide Office to be re-interviewed regarding the child's death. Appellant agreed to go with the officers. They arrived at the police station at approximately 9:20 a.m. As was customary, appellant was signed in as a visitor. Officer Donald Ferguson talked with appellant for approximately thirty minutes then took her to another floor of the building to be interviewed by Officer Joanne Valverde.

Appellant spent several hours with Officer Valverde. During the course of the interview, Valverde conducted a polygraph examination of appellant. Before being subjected to the test, appellant signed a consent form containing statements that appellant voluntarily consented to the exam of her own free will and that she was not under duress or coercion. Appellant later testified that she understood the consent form, and that she could stop the test at any time. The form did not contain *Miranda* warnings.

2

Valverde's later testimony[1] concerning her actions after the completion of appellant's polygraph exam was as follows:

Q:   After administering the exam, what did you do?

A.   After I finished the exam and reviewed it and came to my results, I contacted the investigator [Ferguson]. Then I went and told her [appellant] how she did on her test.

Q.   Those were relevant questions that you asked her?

A.   Yes.

Q.   What were the relevant questions?

A:   Do you know for sure who caused the death of little Roland? Did you cause the death of little Roland? Did you do anything to little Roland to keep him from breathing? Did you tell me the truth today when you said that when you checked on little Roland he had wet his pants and was in a puddle of urine?

Q:   After you talked with the investigator, did you go back and have any further conversation with her?

A:   Yes, sir, I did.

Q:   What did you talk about?

A:   I went and told her, I explained to her – I remember I told her that when I finished the test that I would know without a doubt whether she was telling me the truth or not. I told her, I explained to her that I knew she was not telling the truth. I knew that she had caused little Roland's death.

Q:   Did she respond to you in any way?

A:   She dropped her head and she started crying. Then she said she was sorry. She said she just lost it and hit him.

     I proceeded to hug her and she hugged me. Let me look at my notes here. She said she was sorry. She didn't mean to kill him. She said that she put the pillow on his face. He had told her she was not his mother and he didn't have to listen to her and screamed at her and called her a black bitch.

_____

[1]The testimony is from the hearing on appellant's motion to suppress pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

> She said she put the pillow on his face and she said she just snapped. She said when she put the pillow on his face that it was to shut him up. He stopped struggling at one point and just laid limp.

After this conversation, Valverde called Ferguson into the room and had appellant repeat her confession to him. Ferguson then talked by telephone with an assistant district attorney, and arranged for appellant to make a video-taped statement. No *Miranda* warnings were given to appellant at any time during her questioning at the police station. The medical examiner ruled the death a homicide.

Appellant's first issue contends the trial court erred in overruling, in part, her pretrial motion to suppress the statements taken from appellant. After a hearing on the motion, at which appellant and Officers Ferguson and Valverde testified, the trial court granted the motion insofar as appellant's video-taped statement was concerned, but otherwise overruled it. Officer Valverde testified at trial to the oral statements appellant made to her after the polygraph exam. Appellant here argues that the court should have suppressed those statements because appellant was not given the warnings required under Code of Criminal Procedure article 38.22, section 3(a)(2).[2]

---

[2]Article 38.22, section 3(2) requires, in part, that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless statutory warnings are given to the accused prior to the making of the oral statement. The accused also must knowingly, intelligently and voluntarily waive the rights set forth in the warnings. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon Supp. 2004).

It is undisputed that the warnings were not given, but the State contends they were not required because appellant's statements were not the result of custodial interrogation. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp. 2004); *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528, 128 L. Ed. 2d 293, 298 (1994) (*per curiam*) (obligation to administer *Miranda* warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody'"); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714, 719 (1977) (*per curiam*); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Appellant cogently points out that the trial court necessarily concluded that the officers' questioning of appellant became custodial at some time before they took her video-taped statement, which the trial court suppressed. She argues that she was in custody for article 38.22 purposes before that time, either from the time she was taken to the police station to make a statement or, in the alternative, when she made her first incriminating statement to Valverde, that being the admission that she hit the child.

The State contends that appellant was not in custody at the time the statements were made, and the trial court did not therefore abuse its discretion in denying appellant's motion to suppress those statements.

The disposition of appellant's first issue thus turns on the determination whether appellant was in custody at the time she made the incriminating statements to Officer Valverde. A person is considered to be in custody for this purpose when, under the circumstances, a reasonable person would believe that his freedom of movement was

5

restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996), *citing Stansbury*, 511 U.S. at 322. Resolving the issue, we view the evidence in the light most favorable to the trial court's ruling, reviewing the ruling for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); *see Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002). Too, we review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Willover*, 70 S.W.3d at 845; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex.Crim.App. 1998). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

Appellant, who was nineteen at the time of the suppression hearing, emphasizes that officers arrived at her apartment before 9:00 a.m.; that they knew she was preparing to go to work, but nonetheless told her she needed to accompany them to the Houston Homicide Office to be re-interviewed about the child's death; that, despite her inquiry, she was not told she could reschedule the interview and go on to work, nor was she given any idea how long her interview would last; and that she was taken in the officers' vehicle to the police station, where she was signed in. Appellant argues that a reasonable person would believe that she was not free to leave under those circumstances, and that all of the statements she made at the police station were the result of custodial interrogation.

Considering, as we must, all the objective circumstances surrounding appellant's questioning, *Dowthitt*, 931 S.W.2d at 255, and viewing the evidence in the light most favorable to the trial court's ruling, we cannot agree that appellant was in custody for article 38.22 purposes from the time she was taken to the police station. Officer Ferguson testified he told appellant she did not have to go with the officers to the station if she did not want to do so, and that doing so was voluntary on her part. *Bates v. State*, 15 S.W.3d 155, 160 (Tex.App.–Texarkana 2000, pet. ref'd); *see Shiflet v. State,* 732 S.W.2d 622, 628 (Tex.Crim.App. 1985). No physical restraints were placed on appellant, nor does she contend that there was then any manifestation of probable cause to arrest her. *See Dowthitt*, 931 S.W.2d at 255.

The testimony differs as to how long appellant spent with Officer Valverde, but it appears that appellant had been with Valverde three to four hours when she made the incriminating statements after the polygraph exam. Valverde testified that she devoted the first "hour or two" of her interview of appellant to a lengthy discussion about appellant's work and personal life, part of her effort to make appellant feel comfortable before the polygraph exam. Valverde accompanied appellant to the bathroom once to show her where it was located, and perhaps one other time when she also used the bathroom, but appellant also made several unaccompanied trips to the bathroom. Case law is clear that questioning is not custodial simply because it occurs at the police station, *see Dowthitt*, 931 S.W.2d at 255, and we conclude that the circumstances of appellant's questioning were not such as to lead a reasonable person to believe that she was thereby restrained to the extent associated with formal arrest.

7

Nor did the trial court abuse its discretion in failing to conclude that appellant's interrogation became custodial at the point of Valverde's statement to appellant that she knew from the results of appellant's polygraph that appellant was not telling the truth and knew that appellant had caused the child's death. Interrogation is not custodial simply because it follows a failure to pass a police-administered polygraph examination, even when the failure is reported to the suspect. *See Stone v. State*, 583 S.W.2d 410, 412-13 (Tex.Crim.App. 1979). In its context, Valverde's statement to appellant amounted to a report that appellant had failed the polygraph examination. The "relevant questions" Valverde reviewed with appellant before the polygraph examination, and then asked her during the exam, included the question "Did you cause the death of little Roland?" Valverde testified appellant would have been free to leave even after she had failed the examination and, in response to a question from the trial court, testified she had made it clear to appellant that she was not under arrest. Appellant testified that she asked several times to go home, but her testimony was disputed by the officers.

Appellant finally argues that it was appellant's initial incriminating response to Valverde that marks the point at which her interrogation became custodial. Comparing appellant's response that she was sorry and that she "just lost it and hit him" to the admission by the defendant in *Dowthitt* that he was present during the crime, 931 S.W.2d at 256-57, appellant argues that officers then had probable cause to arrest her and she clearly became the focus of the investigation. Interrogation beyond that point, appellant contends, was custodial, and the resulting statements inadmissible.

8

As appellant's brief on appeal recognizes, though, it is not clear from Valverde's testimony at the hearing on the motion to suppress that appellant's confession to placing the pillow over the child's face was the result of further questioning. Officer Valverde's narrative answer to the prosecutor's question "Did she respond to you in any way?" does not reflect any further interrogation by Valverde. In support of her argument, appellant would have us consider also Valverde's testimony at trial concerning her interrogation of appellant. Appellant asserts the trial testimony makes clear that appellant's statements about the pillow were the result of further interrogation by Valverde. As noted, our review of the trial court's decision on the motion to suppress is necessarily limited to the evidence then before the court. *Willover*, 70 S.W.3d at 845. The trial court's denial of the motion to suppress with respect to appellant's statements to Officer Valverde was not an abuse of discretion.

As noted, testimony at the suppression hearing indicates that, following appellant's confession to her, Valverde summoned Officer Ferguson and appellant made the same confession to him before he arranged for the video-taped statement. Ferguson, though, did not testify to that conversation at trial. Appellant's first issue is overruled.

In appellant's second issue she alleges that the trial court erred in allowing inadmissible polygraph evidence. The specific evidence of which appellant complains is the testimony of the medical examiner Dr. Patricia Moore. During the State's direct examination of Dr. Moore the following exchange took place:

Q: After the autopsy and the microscopic examination and the cultures and toxicology tests, did you find any natural cause of death?

A: No, I could not.

Q: When you spoke with Sgt. Ferguson, what was his feeling about the case and specifically about your autopsy report?

A: I'm not sure how to answer that question.

Q: When you spoke with him, what specifically did you say to him regarding further police investigation?

A: I asked him to polygraph the defendant.

Q: You asked him to do that within his police investigation?

A: Yes.

Q: At that point had you made a final ruling as to the cause and manner of death in this case?

A: No.

Appellant did not make an objection at the time of this testimony, but waited until the next morning, outside the presence of the jury, to move for a mistrial. The motion was denied.

Prior to trial, the trial court granted appellant's motion in limine which requested the prosecutor and the State's witnesses be instructed not to mention the fact a polygraph was given. The granting of a motion in limine, however, will not preserve error. *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Crim.App. 1985). To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P. 33.1(a); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.--Houston [14th Dist.] 2003, no pet. h.); *Russell v. State*, 904 S.W.2d 191, 196 (Tex.App.–Amarillo 1995, pet. ref'd). To be timely, the complaint must be made as soon as the grounds are apparent or should be apparent. *Wilson v. State*, 7

10

S.W.3d 136, 146 (Tex.Crim.App. 1999); *Hollins v. State*, 805 S.W.2d 475, 476 (Tex.Crim.App. 1991). The record reflects that appellant failed to raise a timely and specific objection to the reference to the polygraph; therefore she has waived her complaint. Appellant's second issue is overruled.

Appellant's third issue asserts that her trial counsel's failure to object to the inadmissible polygraph evidence constituted ineffective assistance of counsel. The burden of proving ineffective assistance of counsel is on the appellant and requires proof by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). To show ineffective assistance of counsel at the guilt-innocence phase of a trial, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984) (adopted by the Texas Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App. 1986)). A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 694; *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.–Houston [1st Dist.] 1996, no pet.).

In this case, trial counsel stated his strategy on the record. Counsel moved for a mistrial, out of the presence of the jury, before trial resumed the next day. He stated that his failure to object at the time the testimony was given was an attempt to avoid drawing the jury's attention to the testimony. The court offered to instruct the jury to disregard the

reference to the polygraph, but counsel still did not want to bring the testimony to the jury's attention. Under these circumstances, counsel's decision not to object to the reference to the polygraph at the time did not fall outside the wide range of reasonable representation. *See Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000).

Moreover, the record does not support a contention that counsel's total performance fell below reasonable prevailing professional norms. The analysis of effective assistance takes into consideration the "totality of the representation" rather than isolated acts or omissions of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App. 1986). Appellant's trial counsel presented a vigorous defense on behalf of his client. Appellant fails to meet the first requirement of the *Strickland* test; it is not necessary to address the second. Appellant's third issue is overruled.

Having overruled appellant's issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.