Affirmed and Memorandum Opinion filed October 18, 2005









Affirmed and Memorandum Opinion filed October 18, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01314-CR

_______________

 

LUIS RAMON DELEON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

____________________________________________________________

 

On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 938,869

____________________________________________________________

 

M E M O R A N D U M   O
P I N I O N

A jury convicted appellant, Luis Ramon Deleon, of capital
murder and assessed a life sentence.  In
two issues, appellant contends (1) the trial court erred in denying his motion
to suppress, and (2) the evidence is legally and factually insufficient to
support the verdict.  Because all
dispositive issues are clearly settled in law, we issue this memorandum opinion
and affirm.  See Tex. R. App. P. 47.4.








I.  Background

George Parker, appellant=s life-long friend, testified that
over the years, he has bought marijuana from appellant=s family.  On the evening of February 8, 2003, Parker
and his girlfriend, Bobbie Weaver, were in Parker=s home when appellant and a man, later
identified as Robert Flores, arrived to deliver a pound of marijuana.  As appellant and Flores entered the home,
Flores pointed a pistol at Parker and threatened to kill him if he moved.  While in the home, Flores bound Parker and
Weaver with duct tape, broke a glass ashtray over Parker=s head, demanded Parker=s money, and took Parker=s truck keys and $500 from his
pocket.  Meanwhile, appellant gathered
gun cases from Parker=s bedroom and stacked them in the living room.  Parker asked appellant why he was doing this,
and appellant responded, AI=ve got to feed my baby.@

Next, Flores carried Weaver outside and then came back
inside.  Flores then heard a commotion
outside which prompted him to throw Parker into a wall with such force that
Parker=s head broke through the
sheetrock.  At that point, Parker did not
know where appellant was, but he was not in the immediate area.  Flores then ran back outside.  Parker freed himself from the duct tape and
also ran outside where he again met Flores who knocked him down.  Flores and appellant then fled in a car.

Parker=s neighbors, Raymond Martinez and Roland Reyes, both
testified they were at Martinez=s home when they heard a woman scream Acall the police@ and heard a Apop@ or gunshot at Parker=s home.  They saw a car speed away from Parker=s home, and they called 911.  Raymond=s father, Richard Martinez, ran
towards Parker=s house carrying a pistol and told
Parker he heard a gunshot.  Parker then
found Weaver lying on the driveway with blood on her temple.  Paramedics transported her to the hospital
where she died of a gunshot wound to the head. 
Four days later, appellant turned himself in to the Cameron County
Sheriff=s Office in Brownville, Texas, and
made several oral statements to Lieutenant Manuel Trevino implicating himself
in Weaver=s murder.








II.  Motion To Suppress

In his first issue, appellant contends the trial court erred
by denying his motion to suppress some of his oral statements.  Lieutenant Trevino testified at the hearing
on appellant=s motion to suppress and at trial.[1]  Lieutenant Trevino was in the field when his
secretary called and said that an individual at the station wanted to turn
himself in.  When Lieutenant Trevino
returned to the station, he met appellant and his parents in the main lobby and
asked appellant to step into another lobby. 
Lieutenant Trevino asked appellant why he wanted to turn himself
in.  Appellant responded, AI shot a lady.@

Lieutenant Trevino then escorted appellant into his office
and asked him to sit down.  Appellant was
holding a newspaper clipping, and Lieutenant Trevino saw the headline which
mentioned a murder in Houston. 
Lieutenant Trevino read appellant the Miranda warnings.  Then, Lieutenant Trevino asked appellant what
he had done.  Appellant said, AI shot this girl up in the north side
of Houston.@ 
Appellant also said she was the girlfriend of his friend.  Lieutenant Trevino asked, Ayou believe you=re wanted?@ 
Appellant answered, Ayeah.@

Next, Lieutenant Trevino=s department determined that there
were warrants for appellant=s arrest for capital murder and possession of a controlled
substance.  In addition, while appellant
was in his office, Lieutenant Trevino spoke by telephone with Houston police
officers who confirmed the warrants for appellant=s arrest.  They asked if appellant was willing to
provide a written statement, but he refused and requested an attorney.  According to Lieutenant Trevino, he took
appellant into custody after the telephone conversation ended. Lieutenant
Trevino did not ask appellant any more questions other than routine booking
questions.








Appellant challenges the trial court=s refusal to suppress (1) his initial
statement in the station lobby, and (2) his statements in Lieutenant Trevino=s office.  In reviewing a trial court=s ruling on a motion to suppress
evidence, we apply a bifurcated standard of review giving almost total
deference to a trial court=s determination of historic facts and reviewing de novo
the court=s application of the law to the
facts.  See Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000). 
When, as here, the trial court does not make explicit findings of fact,
we review the evidence in the light most favorable to the trial court=s ruling and assume the trial court
made implicit findings of fact supported in the record that buttress its
conclusion.  See id. at 327B28.

Appellant contends his oral statements were inadmissible
pursuant to article 38.22, section 3(a)(1) of the Texas Code of Criminal
Procedure, which provides that an oral statement of an accused made as a result
of Acustodial interrogation@ is not admissible against the
accused unless an electronic recording is made of the statement.  See Tex.
Code Crim. Procedure Ann. art. 38.22 '3(a)(1) (Vernon 2005).  A person is Ain custody@ only if, under the circumstances, a
reasonable person would believe that his freedom of movement was restrained to
the degree associated with a formal arrest. 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)
(citing Stansbury v. California, 511 U.S. 318, 322 (1994)).  Stationhouse questioning does not, in and of
itself, constitute custody.  Id.
at 255.  The custody determination must
be made on an ad hoc basis, after considering all the objective
circumstances.  Id.  The Court of Criminal Appeals has outlined at
least four general situations which may constitute custody: (1) when the
suspect is physically deprived of his freedom of action in any significant way,
(2) when a law enforcement officer tells the suspect that he cannot leave, (3)
when law enforcement officers create a situation that would lead a reasonable
person to believe that his freedom of movement has been significantly
restricted, and (4) when there is probable cause to arrest and law enforcement
officers do not tell the suspect that he is free to leave.  Id. 









Appellant
does not specifically argue that any of these situations was satisfied although
he suggests he was in custody because his freedom of movement was
restricted.  Thus, the essential inquiry
is whether appellant=s freedom of movement was restricted to the degree associated
with a formal arrest, as opposed to an investigative detention.  See Dowthitt, 931 S.W.2d at
255; Rodgers v. State, 111 S.W.3d 236, 241 (Tex. App.CTexarkana 2003, no pet.).

Initial
Statement in the Station Lobby

First,
appellant argues that his initial statement in the station lobby, AI shot a lady,@ resulted from custodial
interrogation.  We disagree.  Lieutenant Trevino=s testimony supports the trial court=s conclusion that appellant had not
been arrested or otherwise restrained when he made this statement.  Lieutenant Trevino had simply asked appellant
to step from the main lobby into a second lobby and inquired why he wanted to
turn himself in.  According to Lieutenant
Trevino, he was not aware at that point of any murders in Houston or that
appellant was wanted for any crime. 
Instead, the record shows he had met appellant just moments before when
appellant voluntarily appeared at the station. 
Under these circumstances, appellant=s freedom of movement was not
restricted at all, much less to the degree associated with a formal
arrest.  Accordingly, we conclude that
appellant=s statement was not the product of
custodial interrogation.

Statements
in Lieutenant Trevino=s Office

Next,
appellant challenges the admissibility of his responses to the questioning in
Lieutenant Trevino=s office. 
Specifically, he argues that his statement, AI shot this girl up in the north side
of Houston,@ his statement that she was the
girlfriend of his friend, and his affirmative answer to Lieutenant Trevino=s question, Ayou believe you=re wanted?@ resulted from custodial
interrogation.[2]  Again, we disagree.








When
appellant uttered these admissions, he had not been arrested or otherwise
restrained.  He had merely been escorted
from the lobby into Lieutenant Trevino=s office and asked to sit down.  Nevertheless, appellant argues that he was in
custody because Lieutenant Trevino testified he was not free to leave.  Lieutenant Trevino=s testimony is somewhat unclear
relative to whether he considered appellant free to leave.[3]  Regardless, determination of the custody
issue is based on objective circumstances, and not the subjective views of the
police officer except to the extent those views are communicated, or otherwise
manifested, to the suspect.  Dowthitt,
931 S.W.2d at 254 (citing Stansbury, 511 U.S. at 323B26). 
Significantly, there is no indication in the record that Lieutenant
Trevino told appellant he was not free to leave.  Further, there is no indication that appellant
wanted to leave considering he had voluntarily appeared at the station.








Moreover,
even if appellant was not free to leave, he was not in custody but was, at
most, subject to an investigative detention. 
An investigative detention is a detention of a person reasonably
suspected of criminal activity to determine identity or maintain the status quo
momentarily while obtaining more information. 
See Terry v. Ohio, 392 U.S. 1, 20B21 (1968); Josey v. State, 981
S.W.2d 831, 838 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d); Dean v. State, 938 S.W.2d
764, 768 (Tex. App.CHouston [14th Dist.] 1997, no pet.). When Lieutenant Trevino
escorted appellant into his office, the only statement appellant had made was, AI shot a lady.@ 
Appellant emphasizes he had shown Lieutenant Trevino the newspaper
article reporting that appellant was wanted for Weaver=s murder.  However, Lieutenant Trevino testified he had
seen a portion of the headline which mentioned a murder in Houston, but he had
not read the body of the article.[4]  Thus, his testimony demonstrates he did not
know appellant had been charged with a specific crime. 

More
importantly, Lieutenant Trevino=s questions to appellant reflect he did not know appellant
had been charged with any crime.  In
fact, Lieutenant Trevino told appellant he needed to ask him some questions, so
he could determine if he was wanted. 
Consequently, the record demonstrates that Lieutenant Trevino was still
trying to determine what crime, if any, appellant had committed and why he had
appeared at the sheriff=s office a few minutes before.  Based on these circumstances, appellant=s freedom of movement was not
restricted to the degree associated with a formal arrest, as opposed to an
investigative detention.

Finally,
appellant suggests he was in custody because Lieutenant Trevino had read the Miranda
warnings.  However, Lieutenant Trevino
testified he read the Miranda warnings Ajust to be on the safe side@ because appellant was informing him
he had participated in, or committed, a murder. 
Mere recitation of Miranda warnings is more indicative of proper
cautiousness than it is of an officer=s intent to arrest.  See Dancy v. State, 728 S.W.2d
772, 777 (Tex. Crim. App. 1987); Bates v. State, 15 S.W.3d 155, 159
(Tex. App.CTexarkana 2000, pet. ref=d). 
Thus, Lieutenant Trevino=s reading the Miranda warnings did not transform his
subsequent questions into custodial interrogation.  Accordingly, the trial court did not err by
denying appellant=s motion to suppress the statements he made in Lieutenant
Trevino=s office.  We overrule appellant=s first issue.








III.  Sufficiency
of the Evidence

In his
second issue, appellant contends the evidence is legally and factually
insufficient to support his capital murder conviction.   In reviewing the legal sufficiency of the
evidence, we look at all the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).  In reviewing the
factual sufficiency of the evidence, we consider all of the evidence in a
neutral light and will set aside the verdict only if (1) the evidence
supporting the verdict, if taken alone, is too weak to sustain the finding of
guilt beyond a reasonable doubt, or (2) the contrary evidence is so strong that
the State could not have met its burden of proof beyond a reasonable
doubt.  Zuniga v. State, 144
S.W.3d 477, 484B85 (Tex. Crim. App. 2004).

Appellant
does not dispute that he was involved in the robbery at Parker=s home.[5]
Instead, he contends there is insufficient evidence that he shot Weaver or solicited,
encouraged, aided, or attempted to aid Flores in shooting Weaver.  We note that no witness testified to seeing
appellant shoot Weaver.  However, there
is sufficient evidence that appellant shot Weaver.








Appellant
turned himself in to Lieutenant Trevino only four days after Weaver=s murder.  At trial, Lieutenant Trevino testified
regarding appellant=s admissions although he could not recall appellant=s exact words.  In the station lobby, appellant said
something to the effect that he shot a lady in Houston.  When he made this admission, he was holding a
newspaper article with a headline stating, AMan charged in death of woman in
robbery.@ 
The body of the article, which specifically mentions Weaver, was not
admitted into evidence.  However, based
on appellant=s subsequent statements, the jury
could have reasonably concluded that the lady he shot was Weaver.  After Lieutenant Trevino read the Miranda
warnings, appellant said either that he shot or he killed the girlfriend of his
friend.  Further, while Lieutenant
Trevino was subsequently asking appellant routine booking questions, appellant
blurted out, AI was just trying to sell a pound,
the guy=s an asshole and everything went bad.@

Appellant
does not cite any contrary evidence other than suggesting that Parker=s neighbor, Richard Martinez, may
have shot Weaver.  Appellant asserts that
the police were Aquick to point out@ appellant as a suspect instead of
determining whether Martinez=s gun had been fired. 
However, the evidence demonstrates Martinez was not involved in the
robbery and/or shooting; rather, he went to appellant=s house to investigate the gunshot
that killed Weaver.

Consequently,
the jury could have determined beyond a reasonable doubt that appellant shot
Weaver.  Moreover, the evidence
supporting the verdict is not too weak to sustain the finding of guilt beyond a
reasonable doubt, and the contrary evidence is not so strong that the State did
not meet its burden of proof beyond a reasonable doubt.  Accordingly, the evidence is legally and
factually sufficient to support the verdict. 
We overrule appellant=s second issue.

The
judgment of the trial court is affirmed.

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed October 18, 2005.

Panel consists of Justices Edelman,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Lieutenant
Trevino=s testimony at the motion-to-suppress hearing was
slightly different from, but substantially similar to, his trial
testimony.  We will recite his testimony
at the motion-to-suppress hearing when considering the denial of the motion to
suppress.  We will recite his testimony
at trial when considering appellant=s
challenge to the sufficiency of the evidence to support his conviction.





[2]  Appellant also
complains that the trial court did not suppress another statement he made in
Lieutenant Trevino=s office. 
During the telephone conference, one of the Houston police officers
asked if a man named ARobert@ or ARuben@ had also been involved.  Appellant responded, Ano@ and that he had been alone.  However, the trial court did suppress
this statement, but appellant=s counsel, nonetheless, elicited testimony regarding
this statement at trial.





[3]  On
cross-examination, Lieutenant Trevino testified that if appellant had wanted to
leave, Lieutenant Trevino Acouldn=t let him go@ because
he was conducting an investigation and needed to confirm what appellant told
him.  Later, on redirect examination,
Lieutenant Trevino repeated that he would not have let appellant leave;
however, he also stated that appellant was not under arrest, and if a person is
not under arrest, Athey can go.@





[4]  At the
motion-to-suppress hearing, appellant introduced an article from the Houston
Chronicle=s website.  The
headline stated, AMan charged in death of woman in robbery.@  The body
reported that appellant had been charged with capital murder for shooting
Bobbie Weaver during a robbery. 
Lieutenant Trevino=s testimony is somewhat unclear regarding whether
appellant showed him the article when they first met in the station lobby or
after they went into his office. 
Regardless, the article Lieutenant Trevino saw was not a webpage
article, but rather a small newspaper cut-out, and he did not read the body.





[5]  At trial,
appellant=s counsel asked the jury to convict appellant of
aggravated robbery only.  In his brief,
appellant asserts the incident was merely a Abotched
up aggravated robbery@Cnot a capital murder.