Affirmed and Memorandum Opinion filed November 30, 2006








Affirmed
and Memorandum Opinion filed November 30, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00389-CR

____________

 

JUAN SANDOVAL, III, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th District

Fort Bend County, Texas

Trial Court Cause No. 39,517

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Juan Sandoval, III, appeals his conviction for
possession of cocaine in an amount by aggregate weight, including any adulterants
and dilutants, of 200 grams or more, but less than 400 grams.  See Tex. Health & Safety Code Ann. ' 481.115(e)
(Vernon 2003).  With one prior felony conviction, a jury assessed punishment at
twenty years= confinement and a $10,000 fine.  Appellant raises
five issues on appeal.  We affirm.








Factual and Procedural Background

On January 12, 2004, Detective Slater, Detective Raines,
and Officer Matus of the Rosenberg Police Department went to Jamie Adami=s residence at
4255 Avenue H.[1]  
While there, Detective Raines noticed some speakers with distinguishing
characteristics in the living room.  Later that day, he reviewed an offense
report and determined the speakers looked like some speakers reported stolen. 
The next day on January 13, the three officers returned to Adami=s residence, but
the officers could no longer see the speakers from the front door; they asked
to see appellant, who was sleeping in a back room.  The officers asked where
the speakers were, and appellant told them they were in his vehicle.[2] 
Appellant unlocked a white Ford Expedition with a remote key alarm and opened
the doors.  Detective Raines had appellant sign a consent-to-search form, then
Detective Slater removed the speakers from the Expedition.  








While removing the speakers, Detective Slater found a
small, clear baggie with marijuana in it in a front cup holder.  Appellant told
the officers the marijuana was for his personal use.  Detective Slater searched
the remainder of the passenger compartment of the Expedition and found two
digital scales on the front floorboard but found no other controlled
substances.  Detective Slater then testified he attempted to open the hood of
the Expedition using the lever on the inside of the vehicle, but it would not
open.  Appellant told the detective it was broken.  Upon further investigation,
Detective Slater found the wire to open the hood was disconnected.  He pulled
the cable manually and opened the hood.  Detective Slater found carpet padding
behind the right headlamp, and inside the carpet padding he found a brown paper
bag containing several large freezer bags.  Inside the freezer bags, Detective
Slater found crack cocaine, powder cocaine, and a small baggie with green
pills, which he suspected were Ecstasy.  He also found a piece of paper inside
the paper bag with A3900" handwritten on it.  Appellant
was arrested.  While at the police station, appellant told Detective Slater he
bought the drugs for $3,900.  

Discussion

I.                   
Appellant=s
Oral Statement

In his first issue, appellant contends the trial court
erred in admitting an oral statement he made to police.  While being arrested,
appellant made an oral statement to Detective Slater about the piece of paper
found in the paper bag containing the drugs.  The paper had A3900" written on it. 
Appellant told Detective Slater he bought the drugs for A$3,900.@ 
The trial court suppressed appellant=s
statement.  At trial, appellant cross-examined Detective Slater about the piece
of paper and asked the officer why a handwriting expert did not perform an
analysis on the writing to determine who had written the document.  Appellant
also sought to show the jury that Detective Slater had already made up his mind
about appellant and was not interested in continuing the investigation about
whose drugs were found in the Expedition.  Because appellant=s statement was suppressed,
the State argued Detective Slater was unable to explain to the jury that
appellant had told him he bought the drugs for $3,900, and therefore, there was
no need for a handwriting analysis.  The trial court ruled appellant opened the
door to questions about the writing on the paper.  Thus, the State could now
question Officer Slater about appellant=s
oral statement.  The State argues appellant=s
statement became necessary to present an accurate account of the incident.  We
agree.  








As a
general proposition, when a party introduces matters into evidence, he invites
the other side to reply to that evidence.  Kincaid v. State, 534 S.W.2d
340, 342 (Tex. Crim. App. 1976).  Evidence that is otherwise inadmissible may
be admitted to correct a false impression left by the questioning of a witness.
 See Wheeler v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002); Jensen v. State, 66 S.W.3d 528,
538 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  Thus,
inadmissible evidence may be admitted if the party against whom the evidence is
offered opens the door, provided the evidence does not stray beyond the scope
of the invitation.  Schultz v. State, 957 S.W.2d 52, 71 (Tex. Crim. App.
1997).  








Here,
appellant=s cross-examination of Detective Slater introduced the subject of the
handwritten note into evidence.[3]  Through his
questions, appellant left the jury with the false impression that Slater failed
to conduct a thorough investigation by not requesting a handwriting analysis on
the note.  Thus, appellant opened the door to admission of his oral statement
that he had purchased the drugs for $3,900 to explain Detective Slater=s failure to request a handwriting
analysis, thus correcting the false impression appellant=s cross-examination left with the
jury.[4]  

Accordingly, we overrule appellant=s first issue. 

II.                
Exclusion of Conversation Between Appellant=s Former Attorney and Detective








In his second issue, appellant contends the trial court
erred in excluding evidence of a conversation between appellant=s former attorney Christian
Becerra and Detective Slater about whether appellant owned the vehicle in which
the drugs were found, which violated his right to confront witnesses against
him.  During Detective Slater=s
cross-examination, defense counsel asked whether he talked to Becerra about the
ownership of the Expedition, and whether Becerra told the detective that the
vehicle did not belong to appellant.  The State objected to hearsay, appellant=s counsel agreed that the
question called for a hearsay response, and the trial court sustained the
objection.  During appellant=s
case-in-chief, defense counsel proffered Becerra=s
testimony outside the jury=s
presence to show Becerra told Detective Slater that the vehicle did not belong
to appellant, that Becerra read an affidavit written by Slater to the District
Attorney=s office, and
that the affidavit misrepresented what Becerra said.  Both parties argued
extensively about whether the trial court should permit this evidence.  At
first, the trial court ruled appellant could offer Becerra=s testimony.  The court
even permitted appellant to bring the detective back to the stand to show why
the evidence was important.  At this point, defense counsel became concerned
about his ability to present the testimony without the affidavit written to the
District Attorney=s
office, which he thought was inadmissible, and if so, then the trial court
would not permit him to introduce the testimony.  The court would, however,
allow defense counsel to ask the detective about what the detective told the
District Attorney=s
office about ownership of the vehicle without admitting the affidavit into
evidence.  The State became concerned about its ability to cross-examine
Becerra because it could not effectively question Becerra when the
attorney-client privilege had not been waived.  The trial court said the State
could question Becerra, and if the answer required asserting privilege, then
they would deal with it then; the court even suggested a question that would
not violate the attorney-client privilege.  Finally, the trial court stopped
argument from counsel and excluded Detective Slater=s and Becerra=s
testimony completely.  Reading the cold record, it is apparent the trial court
became frustrated with defense counsel=s
continual rehashing of its ruling, a ruling which was actually in appellant=s favor, and finally
excluded the testimony completely.       

We review a trial court=s decision to
limit cross-examination or impeachment of a witness regarding credibility under
an abuse-of-discretion standard.  Cantu v. State, 939 S.W.2d 627, 635
(Tex. Crim. App. 1997).   The constitutional right of confrontation is violated when appropriate
cross‑examination is limited.  Carroll v. State, 916 S.W.2d
494, 498 (Tex. Crim. App. 1996). The scope of appropriate cross‑examination
is necessarily broad; a defendant is entitled to pursue all avenues of cross‑examination
reasonably calculated to expose a motive, bias, or interest for the witness to
testify.  Id.  However, the trial court maintains discretion to impose
reasonable limits on cross‑examination to avoid harassment, prejudice,
confusion of the issues, endangering the witness, and the injection of
cumulative or collateral evidence.  Lopez v. State, 18 S.W.3d 220, 222 
(Tex. Crim. App. 2000).  The Confrontation Clause will prevail if there is a
conflict between it and the Rules of Evidence.  Id.

In his
brief, appellant summarizes the evidence he sought to have admitted as follows:








Detective
Slater was cross-examined about his conversation with appellant=s former lawyer Christian Becerra.  The Court
sustained an objection to what the attorney told Slater.  Later the defense
called Christian Becerra to testify that he told Detective Slater that the
vehicle did not belong to appellant, but that an affidavit Detective Slater
prepared inaccurately stated just the opposite, that Mr. Becerra said the
vehicle was appellant=s.  The testimony was offered on the issue of
ownership and to impeach Detective Slater=s
credibility.  The court excluded Mr. Becerra=s
testimony.  (Record citations omitted).

Rather
than explaining how this evidence, which seemingly consists entirely of out of
court statements offered for the truth of the matters asserted therein, is
admissible, appellant=s brief focuses on a harm analysis and assumes that the trial
court=s ruling was error.  However,
appellant sought admission of evidence of an alleged specific act by Detective
Slater, i.e., that he lied in an affidavit, to attack his credibility. 
Specific instances of the conduct of a witness, other than evidence of a prior
conviction under rule 609, are not admissible for the purpose of attacking or
supporting a witness=s credibility.  Tex.
R. Evid. 608(b).  








Although
the Confrontation Clause occasionally may require the admission of evidence
that the Rules of Evidence would exclude,[5]
appellant makes no effort to explain how this evidence is reasonably calculated
to expose a motive, bias, or interest for Detective Slater to testify, all
appropriate avenues of cross-examination.  Further, appellant was not denied
the opportunity to question Detective Slater about any bias or motivation he
may have had; appellant was simply prevented from asking Detective Slater what
Becerra told him.[6]  Moreover,
the trial court noted that both Detective Slater and another officer testified
that appellant stated the vehicle was his, but that these same officers
testified that their inquiries revealed that the vehicle was not registered to
appellant.  Finally, the affidavit referred to by Becerra was not in evidence,
and appellant argued that it was not admissible.  Under these circumstances and
because the evidence appellant sought to admit was inadmissible under rule
608(b), the Confrontation Clause does not mandate its admissibility, and the
trial court did not abuse its discretion in excluding it. 

Thus, we overrule appellant=s second issue. 

III.              
Extraneous Offense Punishment Evidence








In his third issue, appellant contends the trial court
erred in admitting punishment evidence of the extraneous offense of possession
of marijuana.  During the punishment phase, the State introduced evidence of
prior convictions and the extraneous offense of evading arrest while on bail. 
When the State presented evidence of evading arrest, the State also attempted
to prove appellant threw marijuana out of his car window during the police
chase.  Prior to the introduction of the marijuana evidence, appellant
requested a hearing outside the presence of the jury.  Appellant argued the
marijuana evidence was irrelevant and the State could not prove the drugs
belonged to appellant.  The State argued it had a good faith belief that it
could prove possession of the marijuana beyond a reasonable doubt.  The trial
court overruled appellant=s
objection and allowed the State to present the evidence.  At the conclusion of
the State=s evidence,
the trial court agreed with appellant that the State had failed to link the
marijuana evidence to appellant.  The trial court instructed the jury to
disregard any testimony about any illegal substance found during the police
chase.  Appellant moved for a mistrial, and the trial court denied the motion.

We review the trial court=s
decision to admit the extraneous marijuana offense evidence for an abuse of
discretion.  Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App.
1996).  During the punishment phase, the State may offer evidence as to any
matter the court deems relevant to sentencing, including evidence of an
extraneous offense or bad act that is shown beyond a reasonable doubt to have
been committed by the defendant or for which he could be held criminally
responsible.  Tex. Code Crim. Proc. Ann.
art. 37.07 3(a)(1) (Vernon 2005).








Appellant first argues the trial court erred by not
holding a formal hearing outside the presence of the jury.  When the trial
court is presented with an appropriate objection regarding extraneous offense
evidence, it has the responsibility of determining the threshold issue of
admissibility.  Mitchell, 931 S.W.2d at 954.  The court satisfies this
responsibility by making an initial determination that there is sufficient
evidence for a jury to find appellant committed the extraneous offense beyond a
reasonable doubt.  Mann v. State, 13 S.W.3d 89, 94 (Tex. App.CAustin 2000), aff=d, 58 S.W.3d 132 (Tex.
Crim. App. 2001).  There is no specific requirement that this initial
determination be made by the court following a hearing as opposed to some other
form of preliminary review.[7]  Arzaga v.
State, 86 S.W.3d 767, 781 (Tex. App.CEl
Paso 2002, no pet.).  The trial court may determine whether there is sufficient
evidence through an oral or written proffer of evidence, motions, pretrial
hearings, and the trial, including bench conferences.  Id.  In the
present case, the trial court held a bench conference, after the jury was
removed from the courtroom, in order to determine the initial admissibility of
the evidence.  The trial court did not abuse it discretion by conducting a
preliminary review in this manner.  There is no requirement to conduct the
review at some time other than immediately following the time when appellant
raised an issue about the evidence.  Moreover, defense counsel even phrased the
request for a preliminary review by asking for Aa
hearing outside the presence of the jury.@

Appellant next argues the trial court=s instruction to disregard
was insufficient to cure the harm caused by the presentation of the evidence. 
We disagree.  As a general rule, error in admitting improper evidence may be
cured by a withdrawal of the evidence and an instruction to disregard.  Waldo
v. State, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).  In extreme cases, an
instruction to disregard is insufficent where it appears the evidence is
clearly calculated to inflame the minds of the jury and is of such character as
to suggest the impossibility of withdrawing the impression produced in the
minds of the jurors.  Id.  An appellate court must rely on the
presumption that the jury obeyed the instruction given by the trial court.  Gardner
v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).  In determining
whether a jury instruction is sufficient to cure the error, the facts of each
particular case must be noted.  Gonzales v. State, 685 S.W.2d 47, 49
(Tex. Crim. App. 1985).  

Appellant claims the evidence was calculated to inflame
the minds of the jurors because jurors cannot be expected to understand the
legal significance of Alinks@ between the illegal
substance and appellant.  The trial court, however, instructed the jury about
what the court meant by Alinks.@  Appellant also argues a
prior allegation of drug possession in a case where he is charged with drug
possession will inflame the jury.  Such comparison alone is too weak to claim
it inflamed the minds of the jury or is of such character the jury could not
withdraw it from its mind.  See id. at 48B49
(holding an improper question about a defendant=s
prior arrest for delivery of marijuana, which resulted in no conviction and
which was the same charge defendant was charged under the current case, was
cured by the trial court=s
instruction to disregard).  








The evidence in this case actually supports the
presumption that the jury obeyed the instruction given by the trial court.  The
jury heard punishment evidence of three other crimes committed by appellant,
which could all be taken into account when considering the range of punishment,
and the jury assessed a low punishment.  The jury assessed appellant=s punishment at twenty
years= confinement
when the range of punishment was fifteen to ninety-nine years or life.  Compare
Gonzales, 685 S.W.2d at 49B50
(considering an eleven year sentence out of a possible twenty years as evidence
the jury followed the court=s
instruction to disregard), and Karnes v. State, 127 S.W.3d 184, 197
(Tex. App.CFort Worth
2003, no pet.) (considering a mid-range punishment of fifty-five years out of a
possible ninety-nine years as evidence the jury followed the court=s instruction to
disregard), with Castillo v. State, 699 S.W.2d 337, 339 (Tex. App.CHouston [1st Dist.] 1985,
pet. ref=d)
(considering an assessment of the maximum punishment of ninety-nine years for
burglary of a habitation as evidence the jury did not follow the court=s instruction to
disregard).  Considering the jury=s
decision on the range of punishment was low, we conclude the instruction to
disregard was sufficient.  We overrule appellant=s
third issue. 

IV.             
Jury Misconduct

In his fourth issue, appellant contends he was denied a
fair trial because a juror spoke to a State=s
witness in the presence of two other jurors.  During a break in the punishment
hearing, Detective Thompson, who testified for the State about the extraneous
offense of evading arrest, was approached by a juror.  In front of two other
jurors, the juror thanked the officer for helping him with a flat tire three years
earlier.  The State brought the conversation to the court=s attention, and appellant
moved for a mistrial.  The judge questioned both the officer and the juror and
determined the conversation did not extend past the flat tire incident and did
not include anything about the present trial.  The juror stated he was offended
when asked about the discussion.  The juror stated also his past encounter with
the officer would not influence his decision in any way.  The trial court found
the juror was able to fairly weigh the evidence.  The trial court overruled the
motion for mistrial.  








We review a trial court=s
ruling on a motion for mistrial under an abuse of discretion standard.  Ladd
v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); Rojas v. State,
171 S.W.3d 442, 450 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d). 
Article 36.22 of the Texas Code of Criminal Procedure prohibits any person from
conversing with a juror about the case on trial except in the presence and by
the permission of the court.  Tex. Code
Crim. Proc. Ann. art. 36.22 (Vernon 1981).  When a juror converses with
an unauthorized person about the case, injury to the accused is presumed and a
new trial may be warranted.  Quinn v. State, 958 S.W.2d 395, 401 (Tex.
Crim. App. 1997); see Tex. R.
App. P. 21.3(f).  In order to grant a new trial, an appellant first must show  the
communication occurred and it involved matters concerning the specific case at
trial.  Chambliss v. State, 647 S.W.2d 257, 265B66 (Tex. Crim.
App. 1983).  The State may rebut the presumption of harm.  Quinn, 958
S.W.2d at 401.  We defer to the trial court=s resolution of
historical facts and its determination of credibility and demeanor.  Hughes
v. State, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).  We view the evidence
in a light most favorable to the trial court=s ruling.  Quinn,
958 S.W.2d at 401.  








Appellant asserts harm is presumed here.  We disagree. 
Appellant did not prove the conversation between the juror and the officer
concerned the case, and when that does not occur, injury will not be presumed. 
According to the juror and the officer, the conversation concerned a previous
encounter when the officer assisted the juror in changing a flat tire. 
Appellant also asserts prejudice is shown because two jurors witnessed the
conversation and because the juror was offended because he was questioned about
the conversation.  At trial, appellant did not attempt to prove prejudice with
the other two jurors because when the trial court offered to question those
jurors, appellant declined.  The juror did state he was offended because he was
asked about the conversation.  Even so, the juror told the trial court the
conversation would not influence his verdict.  This issue turns on resolving
questions of witness credibility, and we give almost total deference to the
trial court=s resolution of such issues.  See Quinn,  958
S.W.2d at 401.  Viewing the evidence in the light most favorable to the trial
court=s ruling, we do
not find juror misconduct in this case and overrule appellant=s fourth issue.  

V.                
Enhancement Allegation

In his fifth issue, appellant contends the trial court
erred in allowing the State to amend the enhancement allegation after trial
commenced.  After the guilt phase but before the punishment phase of trial, the
State sought to abandon an allegation in the indictment by striking the name of
the trial court for appellant=s
prior felony conviction for burglary of a habitation.  The State argued
striking the name of the trial court was an abandonment of surplusage and is
not material, and appellant was still provided with notice of the prior
conviction upon which the State relied.  We agree.  

Article 28.10 of the Texas Code of Criminal Procedure
regulates the timing of amendments of an indictment or information and
restricts the State=s
ability to amend an indictment after the trial on the merits commences.  See
Tex. Code Crim. Proc. Ann.
art. 28.10 (Vernon 1989).  An amendment to an indictment is a change that
affects the substance of the indictment, while an abandonment, even if effected
by a physical change in the indictment, does not affect its substance.  Chavis
v. State, 177 S.W.3d 308, 311 (Tex. App.CHouston
[1st Dist.] 2005, pet. ref=d)
(citing Eastep v. State, 941 S.W.2d 130, 132B33 (Tex. Crim. App. 1997), overruled on
other grounds by Riney v. State, 28 S.W.3d 561 (Tex. Crim. App. 2000)).  An
abandonment is appropriate when (1) changing the ways or means of committing
the offense, (2) reducing the charge to a lessor-included offense, and (3)
eliminating surplusage.  Id. Surplusage is unnecessary language not
legally essential to constitute the offense alleged in the charging
instrument.  Eastep, 941 S.W.2d at 134; Chavis, 177 S.W.3d at
311.  








Appellant argues the trial court number is not
surplusage when a county possesses multiple district courts.  Appellant relies
on two cases, which have been explicitly overruled for this exact point of
law.  See Corley v. State, 254 S.W.2d 394 (Tex. Crim. App. 1953) and
Morman v. State, 75 S.W.2d 886, 887 (Tex. Crim. App. 1934), overruled
by Rooks v. State, 576 S.W.2d 615, 616B17
(Tex. Crim. App. 1978).  The trend regarding allegations of prior convictions
is generally towards a relaxation of the rigid rules of the past.  Rooks,
576 S.W.2d 617.  An enhancement paragraph that alleges the date, cause number,
and the offense provides sufficient notice to allow a defendant to locate the
record of the prior conviction upon which the State relied.  See Chavis,
177 S.W.3d at 312.  In such cases, the trial court number would amount to
surplusage and may be abandoned.  See id. at 311B12.  In the indictment against appellant, the
enhancement paragraph alleged the date, cause number, county, and offense. 
Thus, the enhancement paragraph was sufficient to give appellant notice of the
prior conviction.  

Appellant also argues the trial court erred because the Aamendment@ by deletion of the name of
the trial court was untimely.  Article 28.10 prohibits amendments to be made to
the indictment after trial commences, but it does not apply to abandonments.  See
Tex. Code Crim. Proc. Ann.
art. 28.10; Bates v. State, 15 S.W.3d 155, 162 (Tex. App.CTexarkana 2000, pet. ref=d) (holding the trial court
did not err when it permitted the State to abandon allegations during the
course of trial).  Thus, abandoning allegations in an indictment does not
require compliance with the timing requirements of Article 28.10.  See White
v. State, 874 S.W.2d 229, 233 (Tex. App.CHouston
[14th Dist.] 1994), pet. dism=d,
improvidently granted, 890 S.W.2d 69 (Tex. Crim. App.).  

Thus, we overrule appellant=s fifth issue. 

 

 

 

 

 








Conclusion

Having considered and overruled each of appellant=s five issues on appeal, we
affirm the judgment of the trial court.  

 

 

 

 

 

/s/         John
S. Anderson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed November 30, 2006.

Panel consists
of Justices Anderson, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 









[1]  It is not clear from the record whether the officers
were at Adami=s residence on January 12 to search for the speakers
or for some other reason.  At the time, Detectives Slater and Raines were
members of a burglary and theft unit, while Officer Matus was a patrol officer. 
Officer Matus arrived first, followed by the detectives.





[2]  Appellant presented conflicting testimony that he
never said the speakers were in his vehicle, but were in a vehicle. 
The investigation later revealed the Expedition was not registered to
appellant, but it was registered to Rogelio Martinez, who was appellant=s friend.  Other evidence also showed appellant had
inquired about purchasing the Expedition from Martinez on January 12 and had
told another police officer in October 2003 that the Expedition belonged to
appellant. 





[3]  The testimony elicited was as follows:

[defense counsel]: [Y]ou found writing in the vehicle, under the hood,
correct?

[Detective Slater]: It was on a piece of paper with the rest of the
cocaine inside the bag.

[defense counsel]: Okay.  Was it typed or was it written by hand?

[Detective Slater]: Handwritten.

[defense counsel]: Did you take that piece of handwriting to any
handwriting expert to determine if you could find out who, in fact, had written
that document?

[Detective Slater]: No, sir.

* * *

[defense counsel]: But in any event, you did not avail yourself to
[sic] last century technology in determining whether or not someone else or
whether someone had written on that document, correct?

* * *

[defense counsel]: Did the District Attorney=s office or anyone who probably has more
sophistication in these types of techniques suggest to you, wait a minute, if
you found some paper with some writing on it, let=s find out who wrote it?  Was that suggested to you by anyone?

[Detective Slater]: No sir.





[4]  Appellant cites several cases for the proposition
that Aopening the door@
does not excuse the State from complying with the Rules of Evidence and permit
the introduction of inadmissible hearsay.  See Shook v. State,
172 S.W.3d 36, 40 (Tex. App.CWaco 2005, no
pet.); Daniels v. State, 25 S.W.3d 893, 898 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Cardenas v.
State, 971 S.W.2d 645, 651 (Tex. App.CDallas
1998, pet. ref=d).  However, the defendant=s own oral statements made to Detective Slater were
not hearsay.  See Tex. R. Evid. 801(e)(2). 
In addition, this statement was not offered for its truth, but rather to
explain why Detective Slater did not have a handwriting analysis of the note
done.





[5]  Lopez, 18 S.W.3d at 225.





[6]  The record reveals the following exchange during
appellant=s cross-examination of Detective Slater:

[defense counsel]: Do you know the name Christian Becerra?

[Detective Slater]: Yes, I do.

[defense counsel]: And who is he?

[Detective Slater]: He=s a defense
lawyer.

[defense counsel]: Did you have the occasion to talk to him as it
relates to ownership of the Expedition?

[Detective Slater]: Yes, I did.

[defense counsel]: And he, in fact, told you, did he not, that the
Expedition did not belongB

[the State]: Objection, Judge, it=s
going to be hearsay.

[defense counsel]: Okay, he=s
right.

[the court]: Sustained.  Good, I=m
glad you agree.

Appellant went on to cross-examine
Detective Slater for several more minutes after this exchange occurred, without
attempting to explore this issue any further.





[7]  Appellant also references Texas Rule of Evidence
104(c) in support of his argument that the trial court hold a formal hearing.  See
Tex. R. Evid. 104(c).  Rule
104(c) first requires a hearing outside the jury=s presence when determining the admissibility of a confession by a
criminal defendant, which is not applicable here.  Rule 104(c) next requires
hearings on preliminary matters be conducted outside the jury=s presence when the interests of justice so require.  See
id.  Nothing in the rule requires the preliminary review to be conducted
pre-trial or before the punishment phase begins.  Moreover, the trial court did
make a preliminary review outside the presence of the jury when it dismissed
the jury and considered arguments by counsel.